COMBS et al.
v.
UNITED STATES.

CAUDILL et al.
v.
UNITED STATES.

Civ. A. Nos. 713, 714.

United States District Court
E. D. North Carolina, Raleigh Division.
June 16, 1954.

Wade E. Vannoy, Jr., West Jefferson, N. C., and F. T. Dupree, Jr., Raleigh, N. C., for plaintiffs.

Thomas F. Ellis, Asst. U. S. Atty., Raleigh, N. C., for defendant.

GILLIAM, District Judge.

These actions for personal injuries, instituted under the Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., were consolidated for trial and possible appeal. The plaintiffs allege negligent operation of an automobile by an Army sergeant, who was admittedly in the discharge of his official duties at the time of the collision which resulted in their injuries; the defendant denies negligence and alleges that both plaintiffs were negligent.

The injuries resulted when the automobile driven by the sergeant, in an easterly direction, struck plaintiff Caudill at about the center of N. C. State Highway No. 70, and thereafter plaintiff

Combs, who had crossed the highway from north to south in the performance of his duties for one of the contractors engaged in road construction at that point, and was standing at the edge of the highway in the act of getting into a truck parked about eighteen inches off the hard surface. He was crushed between the car and the truck. The accident occurred at about two-thirty in the afternoon; it was cloudy weather, but the surface of the highway was dry.

The construction work at the point of the accident consisted of providing an extra lane for No. 70, making repairs to the old road, and grading between the two lanes; the construction covered a distance of several miles and at the approach from the west, from which the sergeant came, there was a large sign bearing the contractor's name and the warning "Road Under Construction"; between that point and the point of the accident there were eight or more smaller signs, denoting that road construction was in progress; these signs bore such cautions as "Slow down to 20 miles per hour", "Slow down to 25 miles per hour", "Caution, equipment working"; there were graders, bulldozers, and other equipment over a stretch of about a mile in the area where the accident happened, some of it diesel operated, but none of this equipment was located on the road upon which the accident occurred; there were from eight to fifteen men engaged in various forms of construction work in the area. The situation was such as to put any motorist approaching the area on notice that he was entering a construction area and that he should proceed with greater than usual caution.

Both plaintiffs were engaged in construction work on the north side of the old road; there was a truck parked just across the road from where they were working, some few feet farther down the road to the east; as stated, Combs, in performance of his duties, had crossed the road just before the accident for the purpose of getting the truck parked on the south side of the road, and Caudill was attempting to cross the road to the south side in the performance of his duties when struck.

Defendant's agent, driving a government car, approached from the west at a speed found to be not less than forty miles per hour; he did not sound his horn, but applied his brakes at a point about seventy-five feet from where his automobile struck Caudill, and at the moment of impact his left-hand wheels were about twelve inches over the center line; there were faint skid marks for a distance of about thirty-five feet ending at the point of impact and solid skid marks for a distance of forty-two feet from that point to where the car struck Combs standing at the truck parked on the south side of the highway; the view from the west was open and unobstructed for a distance of one thousand feet, and, according to the evidence of the sergeant, he observed a situation indicating danger when five hundred feet from where the collision occurred; he saw Caudill when he came out of the culvert on the north and came rather hurriedly to the edge of the pavement with a bucket in his hand; there is a question of whether he stopped before proceeding across the pavement, but it is definitely established that when he started across and continuously until struck he had his back half turned to the automobile which struck him and was oblivious to its approach; just before Caudill began his unfortunate attempt to cross, a car approached and passed going west; after this car passed, Caudill looked both west and east; whether his view of the automobile coming from the west was obstructed by the one which had just passed, or he was guilty of the rather common fault of looking without seeing, cannot be determined, but it is clear that he did not see the approaching automobile and was unaware of its coming until just before it struck him when it was not possible for him to avoid the impact.

The Government moved for dismissal at the close of plaintiffs' evidence, and decision was reserved; at the close of all evidence the Government renewed the

motion and also moved for a directed verdict in its favor.

All motions are denied. The evidence, in my opinion, is sufficient to present a question of fact on each of the issues.

■ It is found that the defendant's servant was guilty of negligence, and that such negligence was the proximate cause of the personal injuries sustained by each of the plaintiffs. He was driving at a rate of speed greater than was reasonable and prudent under the conditions existing. N.C.G.S. § 20–141(a); 5 Am.Jur., Automobiles, Sec. 194, reading as follows: "The operator of an automobile on the * * * highways is bound to observe extraordinary conditions existing along the way, and when warned, by a sign or otherwise, that workmen are engaged ahead in repairing the road, he must give notice of his approach, and attempt to pass the place where the workmen are so employed at such rate of speed, and at all times have his car under such control, as to avoid injuring workmen so engaged * * *"; he failed to give timely warning to pedestrians upon the roadway, and exercise proper precaution upon observing Caudill walking on the roadway with his back partially turned. N.C.G.S. § 20–174(e); and operated his vehicle on the wrong side of the highway in violation of N.C. G.S. § 20–146.

■ The burden to establish contributory negligence rests upon the defendant, and I find that the burden has not been carried, and that, therefore, neither plaintiff by his negligence contributed to his injuries. As to plaintiff Combs, it appears that defendant can hardly insist seriously upon its assertion of contributory negligence. It may be true that he contributed to his injuries by being in a position near the highway, just as anyone might be said to contribute to his injuries by being in a position to receive them, but I find no negligence on the part of Combs that could be held as contributory negligence. As the North Carolina Court said in West Const. Co. v. Atlantic Coast Line R. Co., 185

N.C. 43, 45, 116 S.E. 3, 5: "There is a distinction between contributory negligence and an act which merely contributes to the plaintiff's injury. 'A man may contribute to his injury without affecting his right to recover. In order to defeat his right to recover he must have not only contributed to the injury, but must have contributed to it under circumstances showing negligence on his part.' "

The issue of contributory negligence as to Caudill presents a more troublesome question. However, under the circumstances, I am not willing to hold as a matter of law or find as a fact that he failed to exercise due care and that such failure was a proximate cause of his injuries. In the first place, it seems to me that his conduct should be judged differently than you would the conduct of an ordinary pedestrian. He was engaged in construction work on the road and knew that the area had been protected by signs showing the progress of improvements and cautioning motorists to proceed with caution. See 5 Am.Jur., Automobiles, Sec. 444: "The general rule that a workman employed in the street, being required to exercise only that degree of care which a reasonably prudent or careful person would exercise under the same circumstances, is justified in assuming that the driver of an automobile will exercise some care to avoid striking him. Accordingly, it has been held that, since a person employed at work in a street must necessarily devote his attention to his work, he is not guilty of contributory negligence for failure to keep a sharp lookout for approaching vehicles." See also 5–6 Huddys Encyclopedia of Automobile Law, Sec. 106: "There can be no duty imposed on a workman to be constantly on the lookout for motor vehicles; on the contrary, it is the duty of drivers of motor vehicles to observe the street laborers and to avoid contact with them." It is true that the authorities are referring to workers on streets, however, this situation was analogous.

■ Nevertheless, Caudill noted and avoided the passing of one automobile, and then looked for others. True, he would not have been injured as he was if he had noted and awaited the passing of the Army car. So that he did contribute to his injuries, but, as I view it, he was not guilty of a negligent act which was a proximate cause of his injuries.

■■ Besides, the defendant's servant had the last clear chance to avoid the injuries to Caudill. Caudill was attempting to cross the road with his back turned upon the approaching automobile. Maybe this was a foolish thing for him to do, maybe it was a negligent act; but, notwithstanding, the defendant's servant in the exercise of due care would have observed his predicament and would have sounded his horn, slackened his speed, or turned to his right so as to avoid the injuries to Caudill. The party who has the last clear chance to avoid an accident is considered solely responsible.

The issues of contributory negligence will be answered against the defendant.

■ What damages are plaintiffs entitled to recover? By stipulation Caudill's actual medical and hospital expenses were $2,000. He is permanently injured and 60 percent totally disabled; he has suffered greatly; the only work he has been able to do since his injuries has been to "help feed the chickens a little"; before, he was earning approximately $3,000 per year; he had a life expectancy of 12.3 years; his hearing has been impaired and an arthritic condition aggravated; he will be a cripple for the balance of his days. His damages, including hospital and medical expenses, are assessed at $15,000.

■ Combs' injuries were not as severe as Caudill's, but he, too, suffered serious, painful and lasting injuries; his hospital and medical expenses amounted to $604.13; he was thirty-two when hurt and was earning at that time $59 per week; he has been able to do very little work since, and at the trial he was still unable to stand on his right leg any

appreciable length of time; the leg disability is about twenty-five percent; the injury to the knee is permanent and it is likely that his earning capacity is permanently impaired. His damages, including hospital and medical expenses, are assessed at $7,500.

The interest of the Standard Accident Insurance Company in the recoveries does not appear in the record before me. A stipulation in this respect should be filed. Thereupon, the United States Attorney will present judgments in accordance with this memorandum.